IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GORDON OGAWA,

        Plaintiff,

   v.

MALHEUR HOME TELEPHONE
COMPANY, et al.,

        Defendants.

No. CV 08-694-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Mr. Ogawa is a former employee of Malheur Home Telephone Company, d/b/a Malheur Bell.  He brought suit against Malheur, and its parent corporation Qwest, (collectively "defendants") alleging:  (1) sex discrimination under Title VII Civil Rights Act and Or. Rev. Stat. § 659A.030; (2) age discrimination under the Age Discrimination Act ("ADEA") and Or. Rev. Stat. § 659A.030; (3) retaliation under Title VII, the ADEA, and Or. Rev. Stat. § 659A.030; (4) wrongful constructive discharge; and (5) breach of contract.

    Currently before the court is defendants' Motion to Dismiss Claim Five, Breach of Contract (#10).  Defendants argue that the state common law breach of contract claim is preempted by section 301 of the Labor Management Relations Act ("LMRA").  Therefore,

PAGE 1 OPINION AND ORDER

defendants contend, the breach of contract claim is time-barred and the complaint fails to state a claim under section 301. For the reasons set forth below, I DENY defendants' motion.

## BACKGROUND

Malheur Bell is a wholly owned subsidiary of Qwest Corporation. Mr. Ogawa worked for Malheur Bell for over thirty years. (Compl. ¶ 2.) Over the course of his employment, he achieved the status of network technician and performed "premium" tasks based on his seniority and training. (*Id.* ¶ 9.) In April 2006, Mr. Ogawa and a co-worker, Mr. Larry Rhinehart, were assigned a cable verification project that entailed comparing actual cable counts to engineer drawings. (*Id.* ¶ 11.) On April 13, 2006, Mr. Ogawa and Mr. Rhinehart were accused of falsifying company documents related to the verification project and suspended without pay. (*Id.* ¶ 12.) Malheur Bell fired Mr. Ogawa on May 2, 2006. (*Id.* ¶ 14.)

On or about May 20, 2006, Mr. Ogawa filed a grievance and formal internal complaint with the Communications Workers of America ("CWA") union and Malheur Bell, claiming age and gender discrimination and retaliation. (*Id.* ¶ 15.) CWA officials and equal employment opportunity personnel from Qwest investigated his claims. (*Id.*) After the investigation, Mr. Ogawa, CWA, and Qwest entered into a written Settlement Agreement under which he would be reinstated and made whole. (*Id.* ¶ 17.)

Mr. Ogawa alleges that after his reinstatement, Malheur Bell's managers and co-workers harassed and committed acts of retaliation against him. (Compl. ¶ 22.) The complaint also avers that Malheur management disclosed the confidential terms of the settlement and did not reinstate Mr. Ogawa to his previous job duties. (*Id.* ¶ 21, 24.) For these reasons, Mr. Ogawa claims that he was constructively discharged. (*Id.* ¶ 33.) He retired on April 27, 2007. (*Id.*)

DISCUSSION

I. **Standard of Review**

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. When considering a motion to dismiss, the court must accept all alleged material facts as true and construe them in the light most favorable to the non-moving party. *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003).

II. **Section 301 Preemption**

Defendants argue that the state law breach of contract claim is preempted by section 301 of the LMRA because Mr. Ogawa's employment was subject to the terms of the Collective Bargaining Agreement ("CBA"). (Defs.' Memo. Supp. Mot. Dismiss (#11) 2-3; Defs.' Reply (#17) 4-5.) Defendants contend that because the breach of contract claim is preempted under section 301, it is time-barred and Mr. Ogawa failed to plead an essential element of the claim. (Defs.' Memo. (#11) 2-4.) Mr. Ogawa does not challenge defendants' contention that the claim is time-barred or that the complaint fails to plead an essential element if the claim is preempted. Rather, he argues that the settlement agreement is not preempted because it is an independent contract and does not require an interpretation of the CBA. (Pl.'s Resp. (#16) 1.)

Enforcement of collective bargaining agreements are preempted by federal law. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983)

PAGE 3 OPINION AND ORDER

("[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." (internal quotation marks omitted)). Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The U.S. Supreme Court further interprets section 301 as "authoriz[ing] federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers Union v. Lincoln Mills of Ala.*, 353 U.S. 448, 451 (1957)). Federal law is applied "in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle*, 486 U.S. at 404 (citing *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962)).

For this reason, federal law also preempts "claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (internal quotation marks and citation omitted). Further, the LMRA incorporates a six-month statute of limitations and, in some circumstances, requires the plaintiff to plead that the union breached its duty of fair representation. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165, 169 (1983).

Therefore, if Mr. Ogawa's breach of contract claim is based on rights arising from the CBA or substantially dependent on interpreting it, section 301 preempts and federal law applies,

including the timing and pleading requirements. *See Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir. 1993) (citing *Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1992)); *DelCostello,* 462 U.S. at 165, 169.

### A. Rights Arising Under the CBA

"[S]ection 301 may preempt a state claim on the basis of the subject matter of the law in question, as where the claims [are] founded directly on rights created by collective-bargaining agreements." *Hayden*, 957 F.2d at 1509 (internal quotation marks and citations omitted). Here, there is the distinct possibility that Mr. Ogawa's breach of contract claim is found in rights conferred by the CBA. However, at this stage of the litigation, the CBA is not before the court. There is no way to determine the substance of the CBA and whether or not the settlement agreement is a product of rights created under the CBA. Thus, while the settlement agreement may be "founded directly on rights" created under the CBA, there is no way for the court to determine the validity of this argument without directly referencing the agreement.

I recognize that the settlement agreement, as described in the complaint, was the result of Mr. Ogawa filing a grievance and formal complaint with CWA. This was followed by an investigation and the Settlement Agreement between Qwest, CWA and Mr. Ogawa. Presumably, all of these events occurred within the grievance procedure and in accordance with the CBA. Nonetheless, I decline to follow defendants suggestion—based on out-of-circuit authority at the summary judgment stage—that following the CBA grievance procedure necessarily dictates that the settlement agreement is preempted. (Defs.' Reply (#17) 3 (citing *Davis v. Bell Atl.-W. Va., Inc.*, 110 F.3d 245, 248 (4th Cir. 1997); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 382-83 (6th Cir. 1991).) The standard, as set forth by the Supreme Court, is not whether the CBA grievance

PAGE 5   OPINION AND ORDER

procedure was followed, but rather the source of the right the plaintiff seeks to vindicate. *See Caterpillar*, 482 U.S. at 394. Certainly, both the procedures and relationship between the parties to the settlement agreement are indicia of the terms of the CBA, but are not sufficient to determine the basis of the rights Mr. Ogawa seeks to vindicate in this matter at the present.

### B. *Substantial Interpretation of the CBA*

Similarly, it is not apparent at this stage of the proceedings whether resolving the breach of contract claim will require interpreting the CBA. Section 301 also preempts "claims which are substantially dependent on analysis of a collective bargaining agreement." *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008) (quoting *Hyles v. Mensing*, 849 F.2d 1213, 1215-16 (9th Cir. 1988); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law.") (internal citation omitted).

However, only claims that "turn[s] on any collective-bargaining [agreement] interpretation" are preempted. *Hayden*, 957 F.2d at 1509 (quoting *Lingle*, 486 U.S. 410 n. 12). As a result, not every claim that "tangentially" involves a provision of the collective bargaining agreement is preempted. *Id*. If the dispute can be resolved by "merely looking to" the CBA, then it is not preempted by federal law. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1071 (9th Cir. 2007); *see also Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."). "Although the line between reference to and interpretation of an agreement may

be somewhat hazy, merely referring to an agreement does not threaten the goal that prompted preemption—the desire for uniform interpretation of labor contract terms." *Ramirez*, 957 F.2d at 749. Additionally, when purely factual questions are at issue, the inquiry does not turn on the meaning of any provision of a collective-bargaining agreement. *See Lingle*, 486 U.S. at 407.

Defendants argue that the complaint implicates the CBA by referring to the terms of Mr. Ogawa's employment and this will necessarily require an interpretation of the agreement. Mr. Ogawa contends that the Settlement Agreement is an independent document that does not require an interpretation of the CBA. (Pl.'s Memo. Opp'n Mot. Dismiss (#16) 6.)

Here, there is some question as to whether resolving the breach of contract dispute between Mr. Ogawa and defendants will necessitate interpreting the CBA. Mr. Ogawa's complaint alleges some types of conduct that may only require factual inquiries. For example, allegations that Mr. Jones violated the Settlement Agreement's confidentiality policy, or that he never intended to follow the terms of the settlement, do not on their surface require an interpretation of the CBA. At this early stage of the proceedings, prior to discovery and the submission of the CBA before the court, I decline to rule that these allegations automatically require an interpretation of the CBA.

## CONCLUSION

For the reasons discussed above, I DENY the defendants' Motion to Dismiss (#10).

IT IS SO ORDERED.

Dated this   8th   day of January, 2009.

>/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court