UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**GORDON OGAWA,**

No. CV 08-694-MO

Plaintiff,

OPINION AND ORDER

v.

**MALHEUR HOME TELEPHONE
COMPANY, dba MALHEUR BELL,
and QWEST CORPORATION,**

Defendants.

**MOSMAN, J.,**

Malheur Home Telephone Company and Qwest Corporation seek summary judgment on
Mr. Ogawa's discrimination, retaliation, and breach of contract claims. At oral argument on
March 17, 2010, I took under advisement their motion regarding Mr. Ogawa's claim of gender
discrimination. I now GRANT IN PART defendants' motion with respect to that claim. I further
clarify that Mr. Ogawa will be permitted to assert that defendants retaliated against him by
creating a hostile work environment.

## FACTUAL BACKGROUND

Mr. Ogawa worked for Malheur Home Telephone Company ("Malheur Bell") for
approximately thirty years. He was a network technician who performed specialized jobs

-1-

including splicing and instruction and maintenance ("I&M") work. During most of the relevant time period, Mr. Ogawa enjoyed seniority among network technicians and spent most of his time on splicing work, which he considered preferable to I&M work.

Malheur Bell had a history of personality conflicts centered around Rosemary Knapp. In April 2006, Ms. Knapp reported that her review of certain documentation showed Mr. Ogawa and a fellow network technician, Larry Rhinehart, had falsely reported completing a cable verification project that they had not, in fact, completed. After investigation by supervisor Ed Jones and President Jimmy Todd, Mr. Ogawa and Mr. Rhinehart were fired.

After their termination, Mr. Ogawa and Mr. Rhinehart filed a union grievance and a written Qwest Internal Equal Employment Opportunity ("EEO") Complaint alleging gender discrimination, retaliation, and, in a later revised complaint, age discrimination. Qwest EEO Investigator, Michael Ayers investigated the complaint and found there was insufficient evidence to support a violation.

In late August and early September 2006, acting through their union, Mr. Ogawa and Mr. Rhinehart agreed to settle their termination grievances with Qwest. Under the terms of the agreement, Mr. Ogawa was to be reinstated to the job title he was assigned in April 2006, at the same level of seniority, and given back pay in the amount of $26,000. He would return to employment subject to a written warning. In signing the agreement, Mr. Ogawa also agreed to release all claims against Qwest, including any claims under Title VII or the Age Discrimination in Employment Act ("ADEA").

When Mr. Ogawa and Mr. Rhinehart returned to work, Mr. Rhinehart returned to his cable splicing position, but Mr. Ogawa was given primarily I&M responsibilities. Mr. Ogawa

complained informally about his job duties but he made no formal complaints. No corrective action was taken. Mr. Ogawa also alleges that he was stripped of his senior status in other respects, such as vacation preferences, assignment to the most remote geographical areas for I&M work, and denial of training opportunities. He also alleges he was humiliated and closely monitored by management. Mr. Ogawa voluntarily quit his employment in April 2007. He subsequently filed this action against defendants, alleging claims for gender discrimination, age discrimination, retaliation, wrongful discharge, and breach of the 2006 settlement agreement in violation of state and federal law.

## PROCEDURAL BACKGROUND

On March 17, 2010, I held oral argument on defendant's Motion for Summary Judgment (#44). At the end of the two-hour hearing, I granted in part, denied in part, and took under advisement in part defendants' motion. The motion was denied as to the enforceability of the 2006 release, defendants' *Ellerth-Faragher* affirmative defense, and plaintiff's constructive discharge, breach of contract, and retaliation claims. The motion was granted as to plaintiffs' hostile work environment, age discrimination, and wrongful discharge claims. I also ruled that Mr. Ogawa could not claim both that the release in the 2006 settlement agreement was invalid and that he was entitled to damages for defendants' breach of the same agreement, and asked Mr. Ogawa to select which of these two inconsistent claims he would pursue at trial. Mr. Ogawa has since elected to pursue a breach of contract claim, which means the release will be held valid as a matter of law.

I now consider whether defendants are entitled to summary judgment on Mr. Ogawa's gender discrimination claim, a matter that was taken under advisement at the hearing. I also

respond to Mr. Ogawa's request for clarification as to whether he may assert at trial that defendants retaliated against him by creating a hostile work environment.

## STANDARD OF REVIEW

Summary judgment is proper when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the record in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the movant initially shows that no genuine issue exists for trial, the non-movant cannot then rest on the pleadings but must respond with evidence setting forth "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party has the "burden of advertising [sic] to 'specific facts showing that there is a genuine issue for trial.' . . . It is not the district court's job to sift through the record to find admissible evidence in support of a non-moving party's case." *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

## I.    Gender Discrimination

"The requisite degree of proof necessary to establish a *prima facie* case for Title VII and ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Although Mr. Ogawa presented no direct evidence of discriminatory intent, he may still establish a rebuttable presumption of discrimination by showing he:  (1) is a member of a protected class; (2) performed his job satisfactorily; (3) suffered an adverse employment action; and (4) was treated differently than a similarly situated employee outside of his protected class. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). If Mr. Ogawa establishes a presumption of discrimination, the burden shifts to defendants to offer a "legitimate, nondiscriminatory reason" for their employment decision. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If defendants offer a non-discriminatory reason for the disparate treatment, the burden shifts back to Mr. Ogawa to show that defendants' stated reason is pretextual. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).

Here, defendants do not challenge Mr. Ogawa's membership in a protected class or his job performance. Nor have they offered a legitimate, nondiscriminatory reason for the disparate treatment Mr. Ogawa alleges. Therefore, for purposes of summary judgment, the question is whether Mr. Ogawa has shown both evidence of an adverse employment action and preferential treatment of individuals outside his protected class sufficient to state a prima facie gender discrimination claim under Title VII.

Mr. Ogawa's evidence is insufficient to raise an inference of discrimination. He presented evidence that an individual outside his protected class, Rosemary Knapp, was treated differently. Specifically, there is evidence that Ms. Knapp was not required to follow employment guidelines, including the Guidelines for Working with an Engineering Work Order ("the Guidelines"), the

employee dress code, and the employee time-keeping regulations.[1] Mr. Ogawa also alleges that Ms. Knapp was not subject to discipline for other conduct, including refusing to speak with Mr. Ogawa in violation of the Guidelines and generally acting with hostility toward Mr. Ogawa and other employees.

On this record, however, the alleged preferential treatment was neither limited to females nor extended to all females. There is uncontested evidence in the record that Ms. Knapp's husband, Dave Knapp, received the same preferential treatment as Ms. Knapp in that Mr. Knapp was not penalized for leaving work early. As stated in the deposition of plaintiff's own witness Larry Rhinehart: "[Rosemary and Dave Knapp] seemed to be the two that liked to leave early every day, an hour or two early and go home." (Scott Decl. (#54) Rhinehart Dep.54:19-55:25.) When Mr. Rhinehart brought Dave Knapp's conduct to the attention of his supervisor, Ed Jones, Mr. Jones took no action and Mr. Knapp continued the same behavior. (*Id.* at 55:4-55:25.) Similarly, Mr. Ogawa's own evidence shows that other females at Malheur Bell did not receive preferential treatment. For example, with respect to following the Guidelines, Ms. Janette Patterson Brockett stated, "We all were required to follow the Guidelines and the Code of Conduct but once again, [Rosemary] Knapp was not." (Brockett Decl. (#60) ¶ 40.)

Furthermore, Mr. Ogawa has not alleged that he was treated adversely in the same areas in which Ms. Knapp was treated preferentially. For purposes of stating a prima facie case, the

---

[1] Some of the evidence Mr. Ogawa cited to support his claim is based on conduct that occurred before September 8, 2006, the date Mr. Ogawa signed a release agreement. For example, plaintiff cites certain examples of preferential treatment discussed in Mr. Rhinehart's deposition testimony, even though Mr. Rhinehart clearly stated that these events occurred prior to his termination and reinstatement. (*See* Pl.'s Suppl. Mem. (#73) (citing Rhinehart Dep. 48:17-49:14-24; 50:6-21; 51:6-16); *see also* Rhinhart Dep. 51:19-24.) Accordingly, I have not considered these examples in analyzing Mr. Ogawa's gender discrimination claim.

preferential treatment and the adverse employment action must relate to similar work conduct. For example, a plaintiff could state a prima facie discrimination claim based on relocation of a laboratory where similarly situated employees were not relocated or forced to give up their laboratory space to junior faculty members. *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1125-26 (9th Cir. 2000). However, the same plaintiff could not state a discrimination claim based on the defendant's failure to provide formal findings in disciplinary actions where there was no evidence that faculty members outside the protected class "received formal responses in similar circumstances." *Id.* at 1126; *see also Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 848 (9th Cir. 2004) (holding that a plaintiff could show he was "adversely and disparately treated" based in part on allegations that he was disciplined for accidentally dropping a pallet of zucchini when other employees outside the protected class were not disciplined for causing "similar or worse damage to warehouse goods").

Here, there is no evidence that Mr. Ogawa was disciplined for taking long breaks, for failing to adhere to the company dress code, or for refusing to comply with the Guidelines. (*See* Ogawa Dep. (#48) Ex. 7 at 39 (admitting that he was never warned or disciplined even though he alleges he was excessively monitored by management).) With respect to being held to certain standards of employment conduct, the most Mr. Ogawa has alleged is that he was required to "work around [Ms. Knapp] even though it took longer and more work." (Ogawa Decl. (#55) ¶ 54(t).) Mr. Ogawa also alleges that he was given a "negative performance review" because, although his performance was rated "meets standards," he was told he needed to improve his

relationship with co-workers and his splicing speed.[2] (*Id.* at ¶ 54(r).) This performance review did not constitute an adverse employment action, however, because Mr. Ogawa does not allege that he suffered any negative consequences, such as a demotion or reduction in salary, as a result of the performance review. There is also no evidence that Mr. Ogawa received suggestions for improvement because he failed to follow the Guidelines or otherwise failed to comply with the employment standards from which Ms. Knapp was exempt. Rather, the evaluation itself was overwhelmingly positive with respect to employment standards, noting that Mr. Ogawa "does good quality work"; "follow[ed] company practices and policies"; and "improved" his "overall work habits." (Starr Decl. (#48) Ex. 20.).

Essentially, Mr. Ogawa's claim requires the Court to construe his own voluntary compliance with certain employment standards as an adverse employment action when a single similarly situated person outside the protected class, along with a member of plaintiff's class, are not held to that same standard. Although Ninth Circuit case law "define[s] 'adverse employment action' broadly," *Fonseca*, 374 F.3d at 847 (quoting *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000)), compliance with certain employment guidelines is not, in and of itself, an adverse employment action—even when another employee is allowed to violate those same guidelines.

Finally, Mr. Ogawa may not state a Title VII claim based on Ms. Knapp's generally

---

[2]  Additionally, even if this performance review were considered an adverse employment action, defendants have presented a nondiscriminatory reason for the fact that Mr. Ogawa's performance reviews changed from "meets and sometimes exceeds standards" to "meets standards." They allege that the lower rating is attributable to the company's decision to change its rating scale "from a four to a five-point rating scale." (Mem. in Supp. of Mot. for Summ. J. (#45) 21 (citing Ogawa Dep. 271:5-272:11); Starr Decl. (#48) Ex. 20).) Mr. Ogawa has not rebutted defendants' nondiscriminatory reason with evidence of pretext, as required under the *McDonnell Douglas* framework. *See Godwin*, 150 F.3d at 1220.

hostile but nondiscriminatory conduct toward him and his coworkers because "ostracism suffered at the hands of coworkers cannot constitute an adverse employment action." *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000); *see also Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 803 (9th Cir. 2003) (finding no adverse employment action when manager alleged to have "stared at [plaintiff] in an angry way and allowed [plaintiff's] co-workers to be mean to her"). Title VII is not "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80 (1998).

## II.    Hostile Work Environment Based on Retaliation

As Mr. Ogawa notes, I previously held he could not state a hostile work environment claim based on age or gender because the record lacked the requisite evidence that any harassment he experienced was motivated by age or gender. *See Oncale*, 523 U.S. at 80 (observing that "Title VII does not prohibit all verbal or physical harassment in the workplace;" it prohibits only harassment based on a protected characteristic). I now consider whether Mr. Ogawa could state a hostile work environment claim based on retaliatory animus.

A hostile work environment claim "is cognizable under the anti-retaliation provisions of Title VII," so long as the retaliatory harassment "is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ray*, 217 F.3d at 1244-45 (quotation and citation omitted). Mr. Ogawa has stated a prima facie case of retaliation under Title VII based on evidence that he:  (1) engaged in a protected activity (filing an EEO complaint); (2) was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. *See, e.g.*, *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005); *Ray*, 217 F.3d at 1240. As discussed at oral argument,

the causal link between Mr. Ogawa's EEO complaint and any adverse employment actions he experienced is based primarily on inferential evidence. Viewing the evidence in the light most favorable to Mr. Ogawa, I am persuaded that the antagonistic conduct he experienced from the time of his reinstatement to the time he quit his employment was sufficient to raise an inference of causality for purposes of summary judgment. *See Porter*, 419 F.3d at 895 (noting that, depending on the specific facts of the case, close temporal proximity or a "pattern of antagonism following the protected conduct" can be sufficient circumstantial evidence of causation).

At oral argument, I also found that Mr. Ogawa could state a claim for constructive discharge. Although recognizing that the Ninth Circuit has "set the bar high" for a claim of constructive discharge, I concluded that a reasonable juror could find that Mr. Ogawa's working conditions had become objectively intolerable. *See Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (noting that a constructive discharge claim is only viable "when working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer"). I reached this conclusion after viewing the evidence in the light most favorable to Mr. Ogawa and considering the historical context of Mr. Ogawa's employment relationship with defendants, which included the circumstances surrounding his termination and reinstatement in 2006. Because a reasonable juror could think that the circumstances of Mr. Ogawa's reinstatement made it futile for him to file additional formal complaints, I further found that the reasonableness of Mr. Ogawa's decision to avoid formal complaint procedures is a jury question. Based on those findings, I ruled that Mr. Ogawa's claim of constructive discharge was not precluded based on his

failure to file a formal complaint, and that defendants were not entitled to the *Ellerth-Faragher* defense as a matter of law.

Therefore, having found that Mr. Ogawa can claim retaliation under Title VII, as well as allege that he was constructively discharged, it necessarily follows that Mr. Ogawa can allege a "hostile work environment" based on retaliatory harassment.

### CONCLUSION

For the reasons set forth above, I GRANT IN PART defendants' Motion for Summary Judgment (#44) as to Mr. Ogawa's gender discrimination claim, but will allow Mr. Ogawa to assert a hostile work environment based on a theory of retaliation.

IT IS SO ORDERED.

DATED this  13th  day of April, 2010.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court