IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**GORDON OGAWA**,

        Plaintiff,

  v.

**MALHEUR HOME TELEPHONE COMPANY**, dba **MALHEUR BELL**, an Oregon corporation; and **QWEST CORPORATION, a Colorado corporation**,

        Defendants.

No. CV 08-694-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiff Gordon Ogawa brought this suit against defendants Malheur Home Telephone Company and Qwest Corporation alleging breach of contract, gender and age discrimination, hostile work environment, retaliatory job assignment, and constructive discharge.[1] Prior to trial, the court granted defendants' summary judgment motion in part, thereby dismissing Mr.

---

[1] At this stage, the parties are intimately familiar with the facts and procedural history of the case, so I will only discuss them as necessary to explain my decision.

OPINION AND ORDER - 1

Ogawa's claims for gender discrimination, age discrimination, and wrongful discharge. At trial, the court granted defendants' motion for judgment as a matter of law as to Mr. Ogawa's claim for breach of the confidentiality clause in the Settlement Agreement, but allowed the remaining claims to go to the jury. On September 10, 2010, the jury returned a verdict finding for Mr. Ogawa on his claims of a retaliatory hostile work environment—based on both supervisor and co-worker conduct—but for defendants as to Mr. Ogawa's remaining claims of breach of contract, retaliatory job assignment, and constructive discharge. The jury awarded $38,000 in emotional distress damages and $100,000 in punitive damages (#148). On September 29, 2010, the court entered judgment for Mr. Ogawa in the amount of $138,000, and for his reasonable attorney fees and costs (#152). Mr. Ogawa now moves for those fees and costs (#164; #168), and defendants object (#177).

From the limited helpful argument I have received, from my own review of the billings, and for the reasons that follow, I award attorney fees in the amount of $220,584.96 and costs in the amount of $15,727.38.

## DISCUSSION

I.  **Step 1: The Lodestar Standard for Recovery of Attorney Fees**

The baseline method for determining a reasonable fee is to determine the hours reasonably worked and multiply that by a reasonable hourly rate. *See, e.g.*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986). It is the fee claimant's burden to prove the reasonableness of the lodestar amount. *Id.* at 563–64. Under plaintiff's calculations, this lodestar method results in the following: 909.9 hours for the Markowitz firm, for a total of $396,880; 1,241.5 hours for the Seibert firm, for a total of $287,840.50; $450 for services by the

OPINION AND ORDER - 2

firm of Moore, Smith, Buxton and Turke, Chtd.; $745 for services by the firm of Capital Law Group; and $8,545.37 in expenses "typically charged to clients"; for a total requested award of $694,460.87.

### A.      *Reasonableness of the Hourly Rates*

Plaintiff has failed to support his requested rates adequately. I agree with defendants that the declaration of Daniel H. Skerritt was untimely, and therefore should be stricken. However, even considering that declaration, I conclude that plaintiff has not supported the requested fee rates, most of which are above the 95th percentile as indicated in the Oregon State Bar's 2007 Economic Survey ("2007 ORB Survey")—which both sides agree is our starting point. I reject plaintiff's conclusion, which he supports only with general Bureau of Labor statistics, that inflation alone justifies significantly higher rates than those in the 2007 survey. Merely noting general national inflation rates does not meet plaintiff's burden of justifying the billing rates sought in this market, by these lawyers, in this type of case. I find that declining to increase the rates to reflect inflation does not result in an unreasonable fee in this case.[2]

For timekeepers whose rates were undisputed, I adopted the proposed rate, except where specifically noted below. I now turn to each disputed timekeeper in turn.

#### 1.      **Lynn Nakamoto, Kail Seibert, and Jeffrey Edelson**

Ms. Nakamoto and Ms. Seibert are each entitled to a maximum billing rate of $325 per hour, which is at the 75th percentile for their experience level. 2007 ORB Survey, at 21. I

---

[2] Any quibble plaintiffs may have with specific reductions in Part I is largely mooted by my determination in Part II that the overall fee is still too high (even including all of the deductions in Part I). That is, any specific reduction not made in Part I likely still would have been deducted in Part II.

OPINION AND ORDER - 3

recognize that each lawyer also claims significant expertise in the area of employment law, and that such experience and expertise tends to be of higher value; however, given the striking amount of time spent by the attorneys on this relatively simple single-plaintiff case, I am skeptical regarding what gains in efficiency the attorneys' expertise produced here. Therefore, considering all of the evidence on the record, I conclude that each attorney is entitled to a rate of $325 per hour. For those hours billed at higher than $325 per hour, I reduce the rate to $325, and for those hours billed at lower than $325, I have retained the proposed billing rate. Although I see no specific objection to Mr. Edelson's proposed rate of $375, I reduce his rate to $325 for the foregoing reasons.

### 2.      Paralegals Greg Scott and Sherri Hohman

Despite Mr. Scott's and Ms. Hohman's significant experience levels, plaintiff fails to establish the reasonableness of the $160–$170 hourly billing rate for these timekeepers. Absent supporting evidence from plaintiff, I instead find that, in line with other recent decisions from this District, $100 is the appropriate hourly billing rate for paralegals in this case. *See, e.g.*, *Whitworth v. Nat'l Enter. Sys.*, No. CV 08-968-PK, 2010 WL 1924505, at *11 (D. Or. April 21, 2010) (accepting a $90 rate for a paralegal); *Hamrick v. Aqua Glass, Inc.*, No. CV 07-3089-CL, 2010 WL 935478, at *7 (D. Or. March 12, 2010) (applying a $100 rate to paralegals).

### 3.      Maya Fitas and Elizabeth Puskar

Ms. Fitas and Ms. Puskar are associates with approximately six-to-eight years of experience each. Because plaintiff has not established that either attorney has developed sufficient pertinent expertise to warrant a premium billing rate, I adopt the 2007 ORB Survey's average figure for associates with seven-to-nine years of experience in Portland, $239 per hour.

OPINION AND ORDER - 4

    4.  **Joel Strong**

  Plaintiff presents no evidence to support a $200 hourly billing rate for a law clerk who was still in law school during the relevant period. Defendants' proposed rate of $100 for Mr. Strong is reasonable and unrebutted, and I therefore adopt that figure.

    5.  **Skip Sperry**

  I conclude that plaintiff should be allowed to recover for time billed by Mr. Sperry, who is licensed in Idaho but not in Oregon. There is no evidence that Mr. Sperry is not in good standing in Idaho, nor any suggestion that he would not have been admitted *pro hac vice* had such a request been made. Moreover, there is no evidence that Mr. Sperry actually "appeared" before this court; rather, it seems he merely engaged in litigation support for plaintiff's properly admitted representatives, and all of his work was supervised by those representatives. Thus, his time is compensable. *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 817, 825 (9th Cir. 2009). Defendants apparently do not separately take issue with Mr. Sperry's rate, and I have no other reason to reject his proposed rate of $300 per hour for someone of his experience level, measured in the Portland market.

    6.  **Other Timekeepers**

  Defendants assert that plaintiff impermissibly requests fees for "clerical time," pointing to individuals with titles like "secretary." For the first time, in a supplemental declaration filed with plaintiff's reply, Ms. Siebert identifies Nichole Snyder, Stephanie Messenger, Kresta Smout, and Jennifer Sperry as "paralegals," or "paralegals/legal assistants." (Siebert Decl. (#182) ¶¶ 8–9.) Despite providing these conclusory titles at this late date, Ms. Siebert still does not offer any information on the specialized training or experience of these timekeepers that

OPINION AND ORDER - 5

would warrant a rate equivalent to that of qualified paralegals like Mr. Scott or Ms. Hohman. Given this lack of support, I would be justified in denying fees entirely for those timekeepers. *See, e.g.*, *Whitworth*, 2010 WL 1924505, at *11. However, despite the tardiness and incompleteness of Ms. Siebert's explanation, I accept her affidavit that these timekeepers were performing non-clerical litigation support, and I believe an unfair total fee would result by disallowing any fee for these timekeepers. Therefore, I will allow a reduced rate of $70 per hour for Ms. Snyder, Ms. Messenger, Ms. Smout, and Ms. Sperry, to account for the non-clerical nature of their work. However, I disallow any fees for hours billed by unidentified timekeepers "AB," "DF," "JSH," "JM," "JQ," and "JH." *See id.*

For similar reasons, given the lack of adequate support provided by plaintiff for any premium rate, I reduce the requested fees for other non-lawyer, non-paralegal timekeepers to $70 per hour for any non-clerical work. This includes "Production Assistants" and "Technology Technicians."

    **B.**    *Reasonableness of the Hours Billed*

I have so far determined appropriate billing rates for each of plaintiff's numerous timekeepers, and I will now turn to the reasonableness of the hours billed. I note from the outset that more than 2,000 hours is too much time to devote to a single-plaintiff employment case that was not unusually complicated.[3] More specifically though, defendants argue that several categories of billing hours should be omitted from the lodestar calculation: (1) hours billed in

---

[3] In analyzing the overall expenditures of time on this matter, I have considered the summaries of billings provided on page three of the Declaration of Lynn Nakamoto, as to billing by the Markowitz firm, and page three of the Declaration of David Symes, as to billing by the Siebert firm—because the Siebert firm did not offer their own such synthesis of their voluminous billings.

OPINION AND ORDER - 6

support of unsuccessful claims that are unrelated to successful claims; (2) vague and indefinite entries; (3) time billed for clerical tasks; (4) excessive, redundant, and unnecessary entries.

### 1. Mr. Ogawa's Unsuccessful Claims

As the Supreme Court has explained, and the parties agree, a party may not recover for unsuccessful claims that are "unrelated" to successful claims. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Claims are unrelated if they are "distinctly different claims for relief that are based on different facts and legal theories"; conversely, claims are related if they "involve a common core of facts or [are] based on related legal theories." *Id.* at 434–35. Here, while Mr. Ogawa did prevail on his claims of a supervisor-created and coworker-created hostile workplace, he did not prevail on the following claims and theories: gender discrimination, age discrimination, wrongful discharge, breach of contract, retaliatory job assignment, and constructive discharge.

Despite losing on the majority of his claims however, Mr. Ogawa makes a compelling argument that most of his unsuccessful claims were related to his successful claims. As Mr. Ogawa contends, his claims of a hostile work environment involved the same core facts as his other claims. In particular, Mr. Ogawa's claims for retaliatory job assignment, discrimination, and constructive discharge plainly involved the same post-reassignment facts as his hostile environment claims; specifically, the common facts included the actions of Mr. Ogawa's supervisors and co-workers that Mr. Ogawa claimed were hostile, and the circumstances surrounding his reassignment.

Defendants erroneously argue that because the jury ultimately found against Mr. Ogawa on his claims for retaliatory reassignment and constructive discharge, those claims are

OPINION AND ORDER - 7

necessarily unrelated. On the contrary, the facts underlying Mr. Ogawa's reassignment and constructive discharge claims were plainly part of Mr. Ogawa's case for his work environment claims; that the jury ultimately determined the elements of those particular claims were not met does not negate the "common core of facts" presented by Mr. Ogawa.

Similarly, defendants argue that certain claims are unrelated because the core facts took place before Mr. Ogawa was reinstated—like portions of Mr. Ogawa's breach of contract and discrimination claims. However, discovery regarding the company's treatment of Mr. Ogawa both before and after his reinstatement plainly provided some amount of necessary background and support for his post-reinstatement claims. For example, in order for Mr. Ogawa to argue that his supervisors created a hostile work environment in retaliation for some prior activity, Mr. Ogawa's counsel had to develop their understanding of, and present to the jury some explanation of, the company's alleged treatment of Mr. Ogawa before he was reinstated. Thus, in light of the foregoing, I determine that the significant majority of Mr. Ogawa's claims share a common core of facts.

However, I ultimately agree with defendants that some portion of Mr. Ogawa's fees for development and argument of his pre-reinstatement claims must be excluded; for example, because the pre-reinstatement facts could only be part of Mr. Ogawa's successful claims as background information, I find it unfair to defendants to conclude that these claims entirely shared a common core of facts. Unfortunately, neither side's counsel has provided me with evidence from which to make a mathematically sound adjustment in light of the partially unrelated nature of some of Mr. Ogawa's claims.[4] Mr. Ogawa's attorneys claim that they made

---

[4] While I fully appreciate that it was Mr. Ogawa's burden to prove the relatedness of his unsuccessful claims, I have found that he carried that burden for the majority of his claims. Therefore, I find it necessary to reduce his award only by some amount commensurate with the

an attempt to reduce their billings by the amount of work spent on unrelated claims—some 60 hours out of the more than 2,000 hours billed—but I find these modest reductions to be inadequate. Based on all of the information before me, and adjusting for my own view of the relative weights of Mr. Ogawa's claims, I conclude that a 20% deduction to the fee is necessary in light of the unrelated nature of a portion of Mr. Ogawa's claims.[5]

### 2. Vague and Indefinite Entries

Defendants seem to merge their argument about vague and indefinite entries into their previous argument about unrelated claims; i.e., because they argue that some of Mr. Ogawa's claims were unrelated, and some of his attorneys' time entries are vague, the court may not determine which time was spent on which claims. I reject that vein of argument because, as explained above, I find that the vast majority of Mr. Ogawa's claims do share a common core of facts, and I already made an adjustment for the portion of his claims I view as unrelated. In light of my findings, it would be inappropriate to reduce the fee further on this theory. That is, counsel reasonably viewed Mr. Ogawa's claims as related, and as such I find that his counsel was reasonable in occasionally failing to indicate which distinct theory they were researching, writing about, preparing for trial, etc. In my own review of the time records, I find that they adequately explain the work performed during given time periods—taking into account some reasonable allowance for the realities of timekeeping during busy periods such as trial.

However, I do concur with defendants as to the only entry they specifically challenge in their response as "vague and indefinite": 45 hours of time spent performing the task of "review, reformatting and redactions of billing in preparation for motion for attorney's fees." (Seibert

---

small portion of his claims that were truly unrelated. It is that precise calculation for which neither side offers much assistance, and that therefore required my own approximation.
[5] For the arithmetical sequence used in applying these deductions, see note 8, below.

OPINION AND ORDER - 9

Decl. (#167-3) 39–41.)  I reject this time entry for preparation of billing records as too vague, and also because it seems to be primarily clerical in nature.[6]  *See, e.g.*, *Strand v. Auto Machinists Pension Trust*, No. 06-1193, 2007 WL 2029068, at *5 (D. Or. July 11, 2007) ("Costs associated with clerical tasks are typically considered overhead expenses reflected in the hourly billing rate, and are not properly reimbursable.")  I therefore deduct 45 hours of Ms. Seibert's time in calculating the lodestar amount.

### 3. Clerical Tasks

As discussed above, I concluded that certain of plaintiff's timekeepers—who defendant argues are clerical workers—were not clerical workers, although not fully qualified paralegals. In that vein, I also generally reject defendants' argument that plaintiff's timekeepers impermissibly billed for clerical tasks.  The particular entries challenged by defendants can reasonably be read to be non-clerical in nature; e.g., defendants scoff at an attempt to bill for "telephone calls" to or from Ms. Snyder—who I have concluded was not merely a secretary—for "prepar[ing] notebooks."  In my own experience, telephone calls and choosing the content for notebooks, for deposition or trial for example, are often non-clerical in nature.  However, I do agree with defendants that some portion of these billings, and those for making travel arrangements, should likely be considered uncompensable clerical time.  While by my own count, such questionable entries may add up to a slightly smaller amount, I will take up

---

[6] Although defendants include this argument in a footnote to their argument about "vague and indefinite" entries, their primary contention regarding this particular entry appears to be that it is uncompensable clerical work; but, defendants also suggest that this one entry casts a pall over all of opposing counsel's time entries.  I reject that argument; while defense counsel may "suspect" that plaintiff's counsel "block-billed . . . and then went back and guessed at how much time was spent on each task," I would need more than defense counsel's conjecture to reach such a result.

OPINION AND ORDER - 10

plaintiff's counsel on their invitation to "deduct 10% of paralegal or production assistant time." (Pl.'s Reply (#181) 11.)

### 4. Excessive, Redundant, and Unnecessary Entries

Defendants are correct that plaintiff's request of some 2,000 hours, amounting to almost $700,000 in fees in this case, is excessive on its face. However, I find that the reductions calculated above in reaching the lodestar, and in Part II below to account for plaintiff's limited success, adequately address a significant portion of defendants' arguments about excessive billing. Moreover, I concur with plaintiff that defendants' ad hominem attacks and hyberbolic posturing do little to aid the court in determining precisely for which tasks, if any, plaintiff's counsel billed too much time. I will not rehash the arguments over each stage of the case here, except to note that even plaintiff's counsel seems to acknowledge that tallying the time spent on particular tasks, or even at particular stages of litigation is nearly impossible on the record before me.[7] Plaintiff's counsel seems to imply that because it is difficult to determine the amount of time spent at particular stages of the case, I should give them the benefit of the doubt; however the law is plainly to the contrary, and any ambiguities should be held against plaintiff. *See Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 563–64.

After attempting to sort out the mathematical differences in the parties' positions, and carefully considering the parties' arguments regarding the amounts billed for particular tasks, I do agree that plaintiffs billed excessively, particularly during discovery and in preparation of summary judgment briefing. I therefore reduce the total number of hours billed by Ms. Seibert

---

[7] At several points in attempting to respond to defendants' claims of overbilling, plaintiff concedes the lack of clarity regarding time spent, or merely rejects defendants' proposed arithmetic out of hand without explanation. (Pl.'s Reply (#181) 6–10.)

OPINION AND ORDER - 11

and Ms. Nakamoto by 20% to account for the unjustifiable number of hours they billed on those tasks.

I also deny plaintiff's request for discovery of defendant's billing in this case. That information would not materially alter the foregoing analysis, and I could not justify subjecting defendants to that additional burden after they already expended significant time to synthesize the Siebert firm's billing records for the court.

### 5. Expenses

Plaintiff claims $8,545.37 in expenses recoverable as fees, such as Westlaw and travel expenses. (Pl.'s Mot. for Fees & Costs (#164) 2.) However, defendants calculate expense reports by plaintiff for only $6,111.51 for research and travel expenses. (Def.'s Resp. (#177) 10.) Plaintiff apparently does not object to that figure, so I will use that as a starting point. I also agree with defendants that a deduction should be made from expenses awarded commensurate with the percentage of other fees deducted for unsuccessful unrelated claims. Therefore, I deduct a further 20% from the $6,111.51 in expenses submitted to the court.

### 6. Lodestar Calculation

In light of the foregoing findings, I calculate the lodestar figure as follows:

**Initial Calculation[8]**

---

[8] **I have factored deductions to individual billings into those timekeepers' subtotals in this initial calculation. However, I included the deduction for unrelated unsuccessful claims**

- **Kail Seibert:** 709.84 (932.3 hours less 45 hours deducted for vagueness, reduced by a further 20% for excessive billing) hours at \$325; 15.8 hours at \$300; 8.4 hours at \$100 = \$236,278.
- **Lynn Nakamoto:** 484.24 hours (605.3 hours reduced by 20% for excessive billing) at \$325 = \$157,378.
- **Jeffrey Edelson:** 0.6 hours at \$325 = \$195.
- **Skip Sperry:** 31.1 hours at \$300 = \$9,330.
- **Maya Fitas and Elizabeth Puskar:** 45.7 hours at \$239 = \$10,922.30.
- **Joel Strong and Susan Buxton:** 38 hours at \$100 = \$3,800.
- **Greg Scott and Sherri H. Hohman:** 167.4 hours (186 hours less 10% for impermissible billing of clerical tasks) at \$100 = \$16,740.
- **Other Timekeepers:** 251.46 (279.4 hours[9] less 10% for impermissible billing of clerical tasks) at \$70 = \$17,602.20.
- **Law firms of Moore, Smith, Buxton and Turke, Chtd. and Capital Law Group:** \$1,195.
- **Subtotal:** \$453,440.50.

### Lodestar Calculation

- **Deduction for Unrelated Unsuccessful Claims of 20%:** \$453,440.50 less 20% = \$362,752.40.
- **Expenses:** \$4,889.21 (\$6,111.51 less 20% deducted for unsuccessful unrelated claims).
- **Lodestar amount:** \$362,752.40 + \$4,889.21 = \$367,641.61.

I agree with defendants that some additional deduction must be made from the lodestar amount in light of plaintiff's limited success, and I address that issue in Section II, immediately below.

### II.   Step 2: Reductions to the Lodestar Figure

---

"below the line"—i.e., by deducting 20% from the subtotal reached in the initial calculation. I did so for the sake of efficiency, and because I consider the deduction for unrelated unsuccessful claims to come conceptually after the initial calculation. I understand that mathematically, this produces a slightly higher lodestar amount than would applying the 20% deduction to each timekeeper's gross hours figure "above the line." Moreover, any effect this has on the lodestar is adequately addressed by my further reductions to the lodestar in Part II, below.

[9] Per my findings above, this figure includes hours from the following timekeepers: Nicole Snyder, Jennifer Sperry, Kresta Smout, Stephanie Messenger, Kelly Shannon, Marie Park, Joel Rice, and Amanda Purvis.

OPINION AND ORDER - 13

When a plaintiff obtains substantially less than his claimed damages, a fee award should be reduced to reflect that limited success. *See, e.g.*, *McCown v. City of Fontana*, 565 F.3d 1097, 1103–04 (9th Cir. 2009) (holding that fees "must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit"). The Supreme Court and the Ninth Circuit have rejected a mechanical application of this rule—i.e., a ratio of successful to unsuccessful claims or requested damages—but I am plainly instructed to "reduce the attorneys fee award so that it is commensurate with the extent of plaintiff's success." *Id.* at 1104 (citing *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 808, 810 (9th Cir. 1994)). Here, even plaintiff concedes that some downward adjustment is appropriate and "respectfully suggests that the adjustment be in the neighborhood of 20%." (Pl.'s Reply (#181) 15.)

I agree with both parties that some additional deduction is appropriate to account for plaintiff's limited success; that is, he ultimately succeeded on only two of several claims,[10] and he received only $138,000 while seeking $1,100,000 from the jury. I am also instructed to compare the amounts proposed in settlement to the amount ultimately won, but here I find that comparison to be relatively unhelpful: While plaintiff offered to settle for $1,100,000 on June 10, 2010, it appears he also offered to settle the entire matter for $160,000 back in September 2009. (Symes Decl. (#178) ¶ 43; Seibert Supp. Decl. (#182) ¶ 24.) Thus, while I have considered the settlement offers made at various times, these disparate figures do little to help me arrive at a final figure that is fair in light of all the circumstances.

---

[10] The parties dispute how many "claims" and "theories" Mr. Ogawa really had, but as discussed above, it is plain that Mr. Ogawa prevailed on fewer than half of his claims and theories.

OPINION AND ORDER - 14

Considering plaintiff's limited success in this case, I conclude that an additional 40% reduction to the lodestar amount is appropriate. This figure reflects the following factors: (1) plaintiff succeeded on fewer than half of his legal claims and only received approximately 12.5% of his claimed damages; however, (2) the lengthy duration of this case, from administrative charge through the jury trial and post-trial motions, justifies departing from a mechanical pro rata calculation of success.

After deducting 40% from the lodestar amount, I arrive at a total fee award of $220,584.96, which I find reasonable in light of the foregoing analysis and all of the circumstances of this case.

### III.   Costs

Plaintiff claims $19,659.22 in costs. Defendants propose reducing that amount by $12,985.25, primarily because plaintiff was unsuccessful on a substantial portion of his claims and requested damages. After carefully considering the arguments of both sides, I deduct 20% from the proposed costs, for the same reasons explained above. I believe a cost award of $15,727.38 properly reflects the "reasonable costs associated with litigating [plaintiff's] claims." *Petrunich v. Sun Bldg. Sys., Inc.*, 625 F. Supp. 2d 199, 211 (M.D. Pa. 2008). I also find that this figure takes into account defendants' argument that some reduction is proper in light of plaintiff's unsuccessful claims.

**CONCLUSION**

For the foregoing reasons, I GRANT IN PART and DENY IN PART plaintiff's motion for fees and costs, and I award fees to plaintiff in the amount of $220, 584.96, and costs in the amount of $15,727.38.  All pending motions are DENIED AS MOOT.

IT IS SO ORDERED.

DATED this   31st    day of March, 2011.

        /s/ Michael W. Mosman
       MICHAEL W. MOSMAN
     United States District Court